IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
JOHNSTOWN

| | |
|---|---|
| KAREEM GARRETT, ) | |
| ) | Civil Action No.: 3:14-cv-00031 |
| Plaintiff, ) | |
| ) | United States District Judge |
| v. ) | Kim R. Gibson |
| ) | |
| DR. MUHAMMAD NAJI, ) | Chief United States Magistrate Judge |
| DR. SHELLA A. KHATRI, ) | Cynthia Reed Eddy |
| DEBORAH CUTSHALL, ) | |
| DEBRA YOUNKIN, ) | |
| JANET PEARSON, ) | |
| NURSE PRACTIONER BARNES, ) | |
| MARY JO BARBER, ) | |
| SERGEANT WOOMER, ) | |
| VINCENT DEFELICE, ) | |
| SERGEANT JAMES, and ) | |
| OFFICER HUNT, ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION ON
THE CORRECTIONS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(ECF 348)[1]**

**I.    RECOMMENDATION**

Before the Court is the Motion for Summary Judgment filed by the Corrections Defendants.[2] For the reasons below, it is respectfully recommended that the motion for summary judgment be granted in part and denied in part.

**II.    REPORT**

    A.    *Relevant Procedural and Factual Background*

---

[1] This matter has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b).

[2] Defendants Younkin, Pearson, Barber, Woomer, DeFelice, James, and Hunt are collectively referred to as the "Corrections Defendants."

This case has a long procedural history, which was recounted by the Court of Appeals for the Third Circuit in its opinion issued September 10, 2019. *See Garrett v. Wexford*, 938 F.3d 69 (3d Cir. 2019), *cert. denied*, 590 U.S. ---, 140 S.Ct. 1611 (May 18, 2020). Thus, the undersigned will summarize only the relevant material facts and allegations, noting where the parties disagree.

This is a civil rights action brought by Kareem Garrett ("Garrett") against medical and corrections staff at SCI-Houtzdale. At the time Garrett filed this lawsuit *pro se* in 2014, he was a state prisoner in the custody of the Pennsylvania Department of Corrections. The events underlying this lawsuit occurred while Garrett was incarcerated at SCI-Houtzdale. He was released on parole on May 19, 2015.

On December 6, 2019, Garrett, through counsel, filed a Fifth Amended Complaint, which remains his operative pleading.[3] (ECF 268). All defendants are sued only in their individual capacities. (*Id.* at ¶¶ 6 – 16). Named in the Fifth Amended Complaint are eleven defendants, seven of whom are the moving Corrections Defendants. Through his Fifth Amended Complaint, Garrett asserts claims for (1) deliberate indifference to his serious medical needs in violation of the Eighth Amendment against all defendants, and (2) retaliation in violation of the First Amendment against four defendants, including Corrections Defendants James and Hunt.

Following the close of discovery, the Corrections Defendants filed this motion seeking summary judgment on all claims arguing that all of Garrett's claims lack merit. In support of their motion, the Corrections Defendants filed a concise statement of material facts and an appendix consisting of 2162 pages. (ECF 348, 349, 350, and 350-1). Garrett argues that

---

[3]   "In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity." *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019), *cert. denied*, 140 S. Ct. 1611 (2020). "Thus, the most recently filed amended complaint becomes the operative pleading." *Id.*

summary judgment should not be granted because genuine issues of material fact are in dispute. He filed in response to the Corrections Defendants' motion, an omnibus brief in opposition, a counter statement of facts, with an appendix consisting of 3663 pages, and a response to the Corrections Defendants' statement of material facts. (ECF 360, 361, and 363). The Corrections Defendants filed a Reply Brief and a Response to Garrett's Counter Statement. (ECF 369 and 370). The matter is fully briefed and ripe for disposition.

B. **Standard of Review**

The standard for assessing a Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure is well-settled. A court should grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Furthermore, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 250.

On a motion for summary judgment, the facts and the inferences to be drawn therefrom should be viewed in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). The moving party has the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. The party opposing the motion, however, cannot rely merely upon bare assertions, conclusory allegations, or suspicions to support its claim. The nonmoving party "must do more than simply show that

there is some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, and must produce more than a "mere scintilla" of evidence to demonstrate a genuine issue of material fact. *See Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

    C.    Discussion

        1.    **Garrett's Eighth Amendment Claims**

            a. **Relevant Facts**[4]

Garrett was first incarcerated at SCI-Houtzdale from November 21, 2011, to October 9, 2012, when he was released on parole. In March of 2013, he was reincarcerated at the Delaware County George W. Hill ("GWH") correctional facility on a parole violation. Garrett's intake forms at GWH noted a chronic history of back pain. During his incarceration at GWH, he was given a special needs pass for a lower bunk, used a walker to ambulate, and was noted to have "noticeable difficulty" walking unassisted. Garrett received an x-ray showing degenerative changes to his spine and was recommended to receive "aggressive PT." During his incarceration at GWH, Garrett suffered additional back injuries when he fell twice and when he was assaulted by prison guards. Garrett was also treated for mental health issues at GWH for which he was prescribed various medications.

On or about September 3, 2013, Garrett was transferred to SCI-Graterford where he was issued a walker and was diagnosed with ambulatory dysfunction. Garrett was housed in the infirmary during his entire time at SCI-Graterford. While at SCI-Graterford, Garrett was prescribed several medications including Pamelor, a dual-indication medication which treats

---

[4] The factual background discussed herein is taken from the parties' concise statements of material facts and the parties' counterstatements to those filings.

nerve pain and psychiatric symptoms. The Pamelor was first prescribed by Dr. Haresh Pandya, an internist who had been treating Garrett's back pain.

On January 9, 2014, Garrett was transferred to SCI-Houtzdale. He arrived in a special handicap-access van, with a walker and a wheelchair. His medical history upon arrival noted that he had had two falls at GWH and that he was able to ambulate with a walker. Defendant Barber sent Garrett to the medical department for a medical evaluation where he was evaluated by Dr. Naji. Dr. Naji wrote Garrett a prescription to continue using the walker for 10 days, with directions that he was to ambulate with it in the hallway three times a day.

During his initial examination, Garrett informed non-defendant Nurse Joyce, who was present in the examining room, that he had seen blood in his stool. Garrett believed that the nurse would conduct an examination for bleeding using a swab. Instead, Dr. Naji performed a rectal examination. There is a dispute whether Garrett consented to the rectal examination. Garrett became upset at the unwanted physical contact and exchanged words with Dr. Naji. Garrett told Dr. Naji that he would be filing a grievance against him for the non-consensual contact.

Four days following the dispute over the rectal exam, Dr. Naji ordered Garrett's walker confiscated. Garrett contends that was done without any physical examination, physical therapy, diagnostic testing, or a review of his prior medical records. In addition to having his walker confiscated, Garrett contends that Dr. Naji instructed Dr. Khatri to take Garrett off Pamelor. Garrett contends both these decisions were made for non-medical reasons, namely as a direct result of his dispute with Dr. Naji about the rectal examination. Garrett contends that he overheard a conversation among Dr. Naji, Medical Defendant Cutshall, and Corrections Defendants Younkin and Pearson where Dr. Naji admitted a non-medical basis for refusing to

permit Garrett the use of a walker. Specifically, according to Garrett, Dr. Naji stated that he was not returning Garrett's walker because Garrett had "called him gay" after the rectal examination.

In addition to filing grievances, Garrett also directly requested help from Corrections Defendants Younkin and Pearson for assistance in getting his walker back.

Over the next four months, Garrett continued to seek treatment for his back pain and ambulatory dysfunction, reporting pain to medical staff and corrections staff, and filing grievances about the lack of medical treatment he was receiving. Garrett also contends that he was subjected to mistreatment at the hands of the Corrections Defendants who were deliberately indifferent to his serious medical needs. According to Garrett, Defendant Barber, his Unit Manager, prevented him from using a handicapped shower, which led to a fall in the shower and ordered him not to receive assistance walking from other inmates. Defendant Barber acknowledged in her deposition that she knew Garrett struggled to walk and that Garrett had arrived at SCI-Houtzdale in a wheelchair. Garrett was unable to regularly access meals at the chow hall because he had no assistance walking.

Further, according to Garrett, the other Corrections Defendants also were deliberately indifferent to his serious medical needs. In April of 2014, Corrections Defendants Woomer and DeFelice saw Garrett receiving assistance from another inmate while walking to the North Walk. They ordered Garrett to let go of the inmate, causing him to fall. After he fell, Defendant Woomer ordered Garrett to stand up. When Garrett asked Defendant DeFelice, "What [am] I supposed to do?", Defendant Woomer instructed Garrett to "crawl like a dog" back to his unit.

When asked about this incident during her deposition, Defendant Woomer testified that the medical department had informed her that Garrett should walk independently and was not allowed to hold on to other inmates for support. According to Defendant Woomer, after Garrett

6

was told to let go of the other inmate, he placed himself in a slow and deliberate manner on the ground. Defendant Woomer testified that she ordered Garrett to stand up because she believed that he could get himself up from the floor and walk because he had lowered himself to the floor in a controlled way. Defendant DeFelice testified in her deposition that she does not remember this incident occurring.

On August 12, 2014, Garrett was reissued a walker, not by Dr. Naji, but through an administrative order issued by Superintendent Cameron. The administrative order also permitted Garrett to utilize the "diet crutch line" at the food hall for persons with disabilities. Garrett was permitted to use a walker until he was paroled on May 19, 2015. After he was released on parole, Garrett sought treatment from several medical providers. He was diagnosed with the following spine conditions: L3/4 bulging disc, herniated disc;L4/5 bulging disc, herniated disc, facet degen hypertrophy; L5/S1 buldging disc, herniated disc, facet degen hypertrophy. He has also been diagnosed with sciatica and cervicalgia, and bilateral sacroiliitis and lumbosacral sprain. He continues to use a cane and a walker for assistance ambulating.

Garrett contends that the Corrections Defendants were aware that he was not receiving appropriate medical care, including not being allowed to use his walker, that he had noticeable difficulty walking unassisted, and, yet, they did not help him. The Corrections Defendants argue that they did not believe Garrett was receiving inappropriate medical care. He often saw medical providers multiple times per week, participated in physical therapy, and received diagnostics scans. Further, according to the Corrections Defendants, as non-medical prison personnel, they had no involvement in Garrett's medical care. The Corrections Defendants argue that Garrett simply disagreed with the diagnoses made by the medical providers and the treatment prescribed by the medical providers.

### b.  Analysis

Prison officials violate the Eighth Amendment when they act deliberately indifferent to a prisoner's serious medical needs by "intentionally denying or delaying access to medical care or interfering with the treatment once prescribe." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)).  A medical need is "serious" if "it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotation omitted). "The seriousness of an inmate's medical need may also be determined by reference to the effect of denying the particular treatment." *Id*.  Deliberate indifference can be established when "necessary medical treatment is delayed for non-medical reasons," *Natale v. Camden Cty Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2002), or "[w]here prison authorities deny reasonable requests for medical treatment." *Monmouth Cty. Corr. Institutional Inmates,* 834 F.2d at 346. *See also Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009) ("Deliberate indifference may be shown by intentionally denying or delaying medical care.").

The parties do not agree on whether Garrett suffered from a "serious medical need."  The Corrections Defendants argue that Garrett has failed to adduce sufficient evidence that would allow a reasonable factfinder to conclude that he suffered from a serious medical condition.  In response, Garrett argues that his medical need was so obvious that a lay person would easily recognize the necessity for a doctor's attention.  Additionally, according to Garrett, the Corrections Defendants had personal direct knowledge of Garrett's serious medical needs, through, *inter alia*, knowing that he arrived at SCI-Houtzdale in a special handicap-access van with a wheelchair and walker, his filed multiple grievances about his medical care, their direct

8

observations of his difficulty ambulating unassisted, his complaints to them about his walker being confiscated for non-medical reasons, and the conversation Garrett overheard between Dr. Naji and Defendants Cutshall, Younkin, and Pearson where Dr. Nagi admitted that he discontinued Garrett's walker for a non-medical reason, i.e., the dispute over the rectal examination. Viewing the facts in the light most favorable to Garrett, as this Court must do, the undersigned finds that there is a genuine dispute of material fact regarding whether Garrett had a serious medical need.  For purpose of this Memorandum Opinion only, the undersigned finds that Garrett had a serious medical need.

Defendants Younkin and Pearson argue that they cannot be liable under a deliberate indifference theory because they were respectively a Corrections Health Care Administrator ("CHCA") and a Nurse Supervision/CHCA, not medical professionals.  In *Pearson*, the Court of Appeals for the Third Circuit clarified when a nurse could be chargeable with deliberate indifference:

> In *Spruill,* we specifically indicated that a non-medical prison official will not be chargeable with deliberate indifference, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." 372 F.3d at 236.  Now confronted with a set of defendants who are not physicians but have some amount of medical training, we clarify that the same division of labor concerns that underlies that rule apply when a nurse knows that a prisoner is under a physician's care and has no reason to believe that the doctor is mistreating the prisoner. Given that it is the physician with the ultimate authority to diagnose and prescribe treatment for the prisoner, <u>a nurse who knows that the prisoner is under a physician's care is certainly "justified in believing that the prisoner is in capable hands," *id*., so long as the nurse has no discernible basis to question the physician's medical judgment.</u>

*Pearson*,  850 F.3d at 540 n.4 (emphasis added).  Here, Garrett alleges that Defendants Younkin and Pearson had actual knowledge that he was being denied medical care for his objective medical need for non-medical, retaliatory reasons, and that they failed to take any action to stop that mistreatment.

Similarly, Officers James, DeFelice, Woomer, Hunt, James, and Barber argue that they are unit managers or corrections officers and had no involvement in Garrett's medical care. In response, Garrett argues that any lay person could easily have recognized the necessity for a doctor's attention for his back pain, the Corrections Defendants personally observed Garrett's difficulty with walking without assistance, he asked them for assistance is getting his walker back, and yet, they failed to assure that he was receiving appropriate medical care.

The undersigned finds that the summary judgment record contains evidence and circumstances suggesting that one or more of the Corrections Defendants knew that Garrett arrived at SCI-Houtzdale in a wheelchair, that his walker had been confiscated for a non-medical reason, that he continually complained of back pain, and had difficulty ambulating unassisted. Taken together, such evidence could lead a reasonable jury to conclude that the one or more of the Corrections Defendants knew that Garrett was not receiving appropriate medical care.

And if a reasonable jury could conclude that one or more of the Corrections Defendants knew that Garrett was not receiving appropriate medical care, it follows that a reasonable jury could infer that the Corrections Defendants' failure to assure he received appropriate medical care, but did not do so, was deliberate. The evidence in the record, reasonably construed in the light most favorable to Garrett, supports the inference that one or more of the Corrections Defendants knew of and chose to disregard an objective intolerable risk of harm to Garrett.

For all these reasons, the Court finds that summary judgment is not appropriate as genuine issues of material fact exist with regard to whether any of the Corrections Defendants were deliberately indifferent to Garrett's serious medical needs.

### 2. Garrett's Retaliation Claims

#### a. Relevant Facts

Garrett alleges that, in addition to being deliberately indifferent to his serious medical needs, Corrections Defendants Hunt and James retaliated against him for engaging in protected activity. According to Garrett, he was subjected to racial slurs and threats by both Defendant Hunt and James after they became exasperated by Garrett's many requests for assistance in getting his walker back, for help getting to meals, and for grievance forms to file grievances against medical staff for denial of care. Garrett's requests also led to arguments between him and James.

The allegations against Defendant Hunt are that after Plaintiff filed numerous grievances about his lack of medical care, Defendant Hunt called him a racial slur and threatened him with disciplinary action for having other inmates assist him. This threat was executed when Garrett received a written misconduct for having other inmates assist him.

According to Garrett, Defendant James physically assaulted him when delivering a misconduct to him by "slamming him on the chest" while he was sleeping, awakening and frightening him and also insulted and cursed at him, all done with a demeanor that was menacing and vindictive. Defendant James does not deny that he issued the misconduct, but claims not to remember anything about his exchange with Garrett when he delivered the misconduct to him.

#### b. Analysis

To state a *prima facie* case of retaliation, a prisoner / plaintiff must demonstrate (1) that the conduct in which he engaged was constitutionally protected, (2) he suffered an "adverse action" at the hands of prison officials; and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him. *Thomas v. Independence Twp.*,

463 F.3d 285, 296 (3d Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). An "adverse action" is one that would "deter a person of ordinary firmness" from exercising his First Amendment rights. *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)(quoting *Support v. Dadonna*, 203 F.3d 228. 235 (3d Cir. 2000)). This is an objective inquiry. *See Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012). This requirement is not too demanding: "unless the claims retaliatory action is truly 'inconsequential,' the plaintiff's claim should go to the jury." *Id*. (citing *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002)).

Threats alone do not constitute retaliation. *Burgos v. Canino*, 358 F. App'x 302, 306 (3d Cir. 2009). However, the evidence of record in this case reflects that the threat by Hunt and James to issue Garrett a misconduct if he sought assistance from other prisoners did not remain unexecuted as he was issued a misconduct in June 2014. *Mack v. Clark*, Civ. A. No. 1:21-cv-0004, 2022 WL 2669510, at *11 (W.D. Pa. July 11, 2022) ("An <u>unexecuted</u> threat to file a misconduct report is not an 'adverse action' . . . .") (emphasis added).

Moreover, while it is well established that a prisoner has no right to be free from verbal abuse, such a legal proposition does not automatically mean that verbal abuse is not adverse for purposes of retaliation. *Anderson v. Davilla,* 125 F.3d 148, 161 (3d Cir. 1997) ("An otherwise legitimate and constitutional government act can become unconstitutional when an individual demonstrates that it was undertaken in retaliation for his exercise of First Amendment rights."). Here, the Court finds that the alleged ongoing verbal harassment by Hunt and James, coupled with the threats and allegations regarding the manner in which James delivered the misconduct to Garrett, are sufficiently severe enough to constitute "adverse action."

The undersigned finds that the summary judgment record raises genuine disputes of material fact from which a factfinder could conclude that Corrections Defendants Hunt and James retaliated against Garrett. Thus, it is recommended that summary judgment be denied on Garrett's retaliation claims against Corrections Defendants Hunt and James.

### 3. Garrett's Fourteenth Amendment Claim

In the Fifth Amended Complaint, Garrett asserts that the denial of medical care deprived him of his right to due process under the Fourteenth Amendment, in addition to violating his rights under the Eighth Amendment. The Corrections Defendants advance the more-specific provision rule as grounds for summary judgment regarding Garrett's Fourteenth Amendment due process claim. Garrett did not respond to this argument.

The more-specific provision rule states that "if a constitutional claim is covered by a specific constitutional provision . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)). The Court of Appeals for the Third Circuit has expressly adopted this rule for cases involving Fourteenth Amendment substantive due process claims brought in combination with claims of other constitutional violations that challenge the same conduct. *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 261 (3d Cir. 2010).

Because Garrett's Fourteenth Amendment claim is based on the same factual allegations underlying his Eighth Amendment claim, the Court finds that Garrett's Fourteenth Amendment due process claim fails under the more-specific provision rule. Thus, the Court recommends entering summary judgment in favor of the Corrections Defendants on Garrett's Fourteenth Amendment claim.

### III. CONCLUSION

For the reasons stated above, it is respectfully recommended that the Motion for Summary Judgment filed by the Corrections Defendants be granted in part and denied in part as follows:

1. Summary judgment should be granted to the Corrections Defendants on Garrett's Fourteenth Amendment claim; and

2. In all other respects, summary judgment should be denied.

Any party is permitted to file Objections to this Report and Recommendation to the assigned United States District Judge. In accordance with 28 U.S.C. § 636(b), Fed.R.Civ.P. 6(d) and 72(b)(2), and LCvR 72.D.2, any written objections must be filed by **September 8, 2022**. The parties are cautioned that failure to file Objections within this timeframe "will waive the right to appeal." *Brightwell v. Lehman*, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). *See also EEOC v. City of Long Branch*, 866 F.3d 93, 100 (3d Cir. 2017) (describing standard of appellate review when no timely and specific objections are filed as limited to review for plain error). Any party opposing objections shall have fourteen days from the date of service of objections to respond.

s/Cynthia Reed Eddy
Cynthia Reed Eddy
Chief United States Magistrate Judge

Dated:  August 24, 2022

cc:   All Counsel of Record
      (via ECF electronic notification)