IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
JOHNSTOWN

| | | |
|---|---|---|
| KAREEM GARRETT, | ) | |
| | ) | Civil Action No. 3:14-cv-00031 |
| Plaintiff, | ) | |
| | ) | United States District Judge |
| v. | ) | Kim R. Gibson |
| | ) | |
| DR. MUHAMMAD NAJI, | ) | Chief United States Magistrate Judge |
| DR. SHELLA A. KHATRI, | ) | Cynthia Reed Eddy |
| DEBORAH CUTSHALL, | ) | |
| DEBRA YOUNKIN, | ) | |
| JANET PEARSON, | ) | |
| NURSE PRACTIONER BARNES, | ) | |
| MARY JO BARBER, | ) | |
| SERGEANT WOOMER, | ) | |
| VINCENT DEFELICE, | ) | |
| SERGEANT JAMES, and | ) | |
| OFFICER HUNT, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION ON THE MOTION FOR SUMMARY
JUDGMENT FILED BY DEFENDANTS BARNES, CUTSHALL, AND NAJI
(ECF 351)[1]**

**I.    RECOMMENDATION**

Before the Court is the Motion for Summary Judgment filed by Defendants Margaret Barnes, CRNP; Debra Cutshall, and Dr. Muhammad Naji (collectively referred to as the "Medical Defendants"). For the reasons below, it is respectfully recommended that the motion for summary judgment be granted in part and denied in part.

**II.   REPORT**

    A.    *Relevant Procedural and Factual Background*

---

[1] This matter has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b).

1

This case has a long procedural history, which was recounted by the Court of Appeals for the Third Circuit in its opinion issued September 10, 2019. *See Garrett v. Wexford*, 938 F.3d 69 (3d Cir. 2019), *cert. denied*, 590 U.S. --- ,140 S.Ct. 1611 (May 18, 2020). Thus, undersigned will summarize only the relevant material facts and allegations, noting where the parties disagree.

This is a civil rights action brought by Kareem Garett ("Garrett") against medical and corrections staff at SCI-Houtzdale. At the time Garrett filed this lawsuit *pro se* in 2014, he was a state prisoner in the custody of the Pennsylvania Department of Corrections. The events underlying this lawsuit occurred while Garrett was incarcerated at SCI-Houtzdale. He was released on parole on May 19, 2015.

On December 6, 2019, Garrett, through counsel, filed a Fifth Amended Complaint, which remains his operative pleading.[2] (ECF 268). All defendants are sued only in their individual capacities. (*Id*. at ¶¶ 6 – 16). Named in the Fifth Amended Complaint are eleven defendants, three of whom are the moving Medical Defendants. Through the Fifth Amended Complaint, Garrett asserts claims for (1) deliberate indifference to his serious medical needs in violation of the Eighth Amendment against all defendants, and (2) retaliation in violation of the First Amendment against four defendants, including Medical Defendant Dr. Naji.

Following the close of discovery, the Medical Defendants filed this motion seeking summary judgment on all claims arguing that all of Garrett's claims lack merit. Garrett argues that summary judgment should not be granted because genuine issues of material fact are in dispute. The Medical Defendants filed in support of their motion, a brief, a concise statement of

---

[2] "In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity." *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019), *cert. denied*, 140 S. Ct. 1611 (2020). "Thus, the most recently filed amended complaint becomes the operative pleading." *Id.*

2

material facts, and an appendix consisting of 778 pages. (ECF 353 and 352). Garrett in response filed an omnibus brief in opposition, a counter statement of facts, with an appendix consisting of 3663 pages, and a response to the Medical Defendants' statement of material facts. (ECF 360, 361, and 362). The Medical Defendants filed a Reply Brief and a Response to Garrett's Counter Statement. (ECF 371 and 372). The matter is fully briefed and ripe for disposition.

B.    **Standard of Review**

The standard for assessing a Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure is well-settled. A court should grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Furthermore, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 250.

On a motion for summary judgment, the facts and the inferences to be drawn therefrom should be viewed in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). The moving party has the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. The party opposing the motion, however, cannot rely merely upon bare assertions, conclusory allegations, or suspicions to support its claim. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, and must

produce more than a "mere scintilla" of evidence to demonstrate a genuine issue of material fact. *See Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

    C.    Discussion

        1.    Garrett's Eighth Amendment Claims

            a. Relevant Facts[3]

Garrett was first incarcerated at SCI-Houtzdale from November 21, 2011, to October 9, 2012, when he was released on parole. In March of 2013, he was reincarcerated at the Delaware County George W. Hill ("GWH") correctional facility on a parole violation. Garrett's intake forms at GWH noted a chronic history of back pain. During his incarceration at GWH, he was issued a special needs pass for a lower bunk, used a walker to ambulate, and was noted to have "noticeable difficulty" walking unassisted. Garrett received an x-ray showing degenerative changes to his spine and was recommended to receive "aggressive PT." During his incarceration at GWH, Garrett suffered additional back injuries when he twice fell in the shower and when he was assaulted by prison guards. Garrett was also treated for mental health issues at GWH for which he was prescribed various medications.

On or about September 3, 2013, Garrett was transferred to SCI-Graterford where he was issued a walker and was diagnosed with ambulatory dysfunction. Garrett was housed in the infirmary during his entire time at SCI-Graterford. While at SCI-Graterford, Garrett was prescribed several medications including Pamelor, a dual-indication medication which treats nerve pain and psychiatric symptoms. The Pamelor was first prescribed by Dr. Haresh Pandya, an internist who had been treating Garrett's back pain.

---

[3]     The factual background discussed herein is taken from the parties' concise statements of material facts and the parties' counterstatements to those filings.

On January 9, 2014, Garrett was transferred to SCI-Houtzdale. He arrived in a special handicap-access van, with a walker and a wheelchair. His medical history upon arrival noted two falls at GWH and that he was able to ambulate with a walker. Garrett was admitted to Infirmary until cleared for general population. Dr. Naji saw Garrett on January 9, 2014. At that time, Garrett complained of muscle ache all over his body since an assault in August 2013. Garrett informed non-defendant Nurse Joyce, who was present in the examining room, that he had seen blood in his stool. Garrett believed that the nurse would conduct an examination for bleeding using a swab. Instead, Dr. Naji performed a rectal examination. There is a dispute whether Garrett consented to this rectal examination. Garrett became upset at the unwanted physical contact and exchanged words with Dr. Naji. Garrett told Dr. Naji that he would be filing a grievance against him for the non-consensual contact.

Dr. Naji ordered that Garrett be admitted to the infirmary for 23-hour observation and directed that Garrett was to be made to walk in the hallway three times per day for ten days. Dr. Naji also directed that a walker was to be issued for ten days and Garrett's wheelchair was to be discontinued. However, because Garrett was in administrative custody due to a misconduct filed against him while he was at SCI-Graterford, he was unable to walk the hallway. He was observed, however, using his walker to ambulate in his cell.

On January 13, 2014, Dr. Naji ordered that Garrett's walker be taken from him. Later that day, Garrett fell. The reasons for the walker being taken from him and Garrett's fall are disputed. Dr. Naji contends that the walker was discontinued because it was believed Garrett was able to walk without a walker and since he was in the RHU, his walker would be discontinued so that he could walk in his room without an assistance device and train his body and increase his activity. Garrett responds that he struggled to maneuver about his cell and that

he needed to lean on his bed tray table to ambulate to his cell door to receive his medication. Garrett argues that the walker was discontinued without any physical examination, physical therapy, diagnostic testing, or a review of his prior medical records. Garrett contends that his walker was confiscated for non-medical reasons, namely as a direct result of his dispute four days earlier with Dr. Naji about the rectal examination. Further, Garrett contends he fell because he did not have use of the walker. CO London, a non-defendant who witnessed the fall, reported that the fall was orchestrated and controlled.

On January 14, 2014, Garrett filed Grievance 493476 complaining that Dr. Naji ordered the discontinuation of Garrett's medically needed walker for non-medical reasons. Further, Garrett contends that he overhead a conversation among Dr. Naji, Cutshall, Younkin, and Pearson where Dr. Naji stated that he was not returning Garrett's walker because Garrett "called him gay" after the rectal examination.

On January 10, 2014, Garrett met with Dr. Khatri at his cell door. Dr. Khatri told Garrett that she had met with Dr. Naji and they had determined that Pamelor would be discontinued due to Garrett's elevated heart rate. Garrett asked Dr. Khatri not to discontinue his Pamelor because he knew that it reduced his chronic back pain. He contends that no suitable replacement was offered to him. Dr. Khatri contends that he refused any alternative medication. Garrett also contends that he told Dr. Khatri that Dr. Naji had performed an unconsented to rectal exam.

Over the next four months, Garrett continued to seek treatment for his back pain and ambulatory dysfunction, reporting pain to medical staff and corrections staff, and filing grievances about the lack of medical treatment he was receiving. However, according to Garrett, Dr. Naji's determination that Garrett was not permitted to receive assistance walking made life difficult. For example, Dr. Naji repeatedly accused Garrett of "manipulative behavior." On the

order approving referral for a physical therapy consultation, Dr. Naji wrote "manipulative behavior" on the referral form. Dr. Naji denied Garrett access to the disability gym. On March 19, 2014, Garrett was left strapped to a backboard for nine hours and left to urinate on himself before finally being examined by Dr. Naji.

On May 11, 2014, Garrett was taken to medical for an EKG[4] due to reported chest pain. The results of the EKG are in dispute. Garrett contends that the EKG showed him in atrial fibrillation. The Medical Defendants contend that the EKG needed to be repeated because Garrett had been shaking his leg and, as a result, the findings were not reliable. The second EKG indicated a normal sinus rhythm. Garrett contends that the first EKG showing uncontrolled atrial fibrillation is not in his medical file and argues that Defendant Barnes intentionally destroyed this medical record.

On August 12, 2014, Garrett was reissued a walker, not by Dr. Naji, but through an administrative order issued by Superintendent Cameron. The administrative order also permitted Garrett to utilize the "diet crutch line" at the food hall for persons with disabilities. Garrett was permitted to use a walker until he was paroled on May 19, 2015. After he was released on parole, Garrett sought treatment from several medical providers. He was diagnosed with the following spine conditions: L3/4 bulging disc, herniated disc;L4/5 bulging disc, herniated disc, facet degen hypertrophy; L5/S1 bulging disc, herniated disc, facet degen hypertrophy. He has also been diagnosed with sciatica and cervicalgia, and bilateral sacroiliitis and lumbosacral sprain. He continues to use a cane and a walker for assistance ambulating.

---

[4] Garrett refers to the test as an EKG; the Medical Defendants refer to the test as an ECG. The procedure apparently was an electrocardiogram, which is referred to as either an EKG or an ECG. *See* Depo of Margaret Barnes, at p. 19 (ECF 351-7).

**b. Analysis**

The Medical Defendants argue that the summary judgment evidence of record demonstrates that Garrett received ample medical treatment during his incarceration at SCI-Houtzdale and, as a result, summary judgment should be entered in their favor. Garrett responds that the central issue of whether Garrett received constitutionally adequate care turns on numerous disputed issues of material fact that a jury must decide.

Prison officials violate the Eighth Amendment when they act deliberately indifferent to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." *Estelle,* 429 U.S. at 104. This indifference can manifest in an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer*, 991 F.2d at 68, or "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990). It is well-settled that "an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim." *Tillery v. Noel*, 2018 WL 3521212, at *5 (M.D. Pa. June 28, 2018) (collecting cases). Such complaints fail as constitutional claims because "the exercise by a doctor of his professional judgment is never deliberate indifference." *Gindraw v. Dendler*, 967 F. Supp. 833, 838 (E.D. Pa. 1997) (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.")).

When it comes to claims of deliberate indifference, there is a "critical distinction" between allegations of a delay or denial of a recognized need for medical care and allegations of

inadequate medical treatment. *Pearson v. Prison Health Service,* 850 F.3d 526, 535 (3d Cir. 2017) (quoting *United States ex rel. Walker v. Fayette Cty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979)). A claim alleging the delay or denial of medical treatment, which like other forms of scienter, can be proven through circumstantial evidence and witness testimony. *Id*. But "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.* (citing *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). Furthermore, courts "disallow any attempt to second-guess the proprietary or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment." *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)) (alterations in original). "[I]t is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough v. Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990). "Mere disagreements as to the proper medical treatment [does not] support a claim of an [E]ighth [A]mendment violation." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 324 (3d Cir. 1987); *see also Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993) (explaining that deliberate indifference requires something "more than negligence").

For purpose of this Report only, the undersigned assumes that Garrett's back pain and issues ambulating were sufficiently serious so as to qualify as a "serious medical need" and will proceed to analyze whether Garrett has alleged facts from which a reasonable factfinder could find that the Medical Defendants were deliberately indifferent to his serious medical need.

### i.     Dr. Naji

Dr. Naji argues that he is entitled to summary judgment because Garrett received constitutionally adequate medical treatment throughout his confinement at SCI-Houtzdale, that Garrett's complaints were appropriately addressed, and that he was provided medical treatment as was medically necessary. Garrett responds that there are genuine issues of disputed facts which preclude the grant of summary judgment.

The crux of this lawsuit is the allegation that Dr. Naji discontinued the use of a walker by Garrett for non-medical reasons and that the discontinuance of the walker resulted in suffering and risk of injury, all of which Garrett argues amounts to deliberate indifference. Dr. Naji states that the walker was discontinued because Garrett was moved to the restricted housing unit where there was no room to walk with a walker and there was no otherwise medical need for one. Garrett testified in his deposition that he overheard Dr. Naji express a non-medical basis for revoking his walker – namely, because of the dispute over the rectal examination. Garrett had been prescribed the walker by medical staff at GWH and again by the medical staff at SCI-Graterford. Further, Garrett contends that before discontinuing the walker, Dr. Naji's clinical evaluation of him was cursory at best. Dr. Naji did not consult a physical therapist, does not recall reviewing Garrett's records from SCI-Graterford, and failed to order any tests to investigate Garrett's ambulatory dysfunction or to determine whether a walker was the necessary treatment. Garrett also contends that Dr. Naji denied Garrett's requests for disability gym access, a handicapped cell, and handicapped shower access.

The undersigned finds that the record raises genuine disputes of material fact about the merits of whether Dr. Naji was deliberately indifferent to Garrett's serious medical needs. The record contains evidence showing that Garrett needed to use a walker which was documented

and noted in his medical records from GWH and SCI-Graterford. Such evidence could lead a reasonable jury to conclude that Garrett had a serious medical need which required the use of a walker to ambulate, and that in discontinuing the walker, Dr. Naji acted with deliberate indifference. Judged against the legal tenets applicable to summary judgment motions, the undersigned recommends that summary judgment be denied on Garrett's claim against Dr. Naji for deliberate indifference to Garrett's serious medical needs. The contrasting positions of the parties on material issues are irreconcilable and are sharply at odds with one another.

  ii. **CRNP Margaret Barnes**

On May 11, 2014, Garrett was taken to medical for an EKG due to complaints of chest pain. An EKG was performed by Nurse Rich. According to Garrett, the EKG showed that he was in uncontrolled atrial fibrillation. The medical record reflects that CRNP Barnes reviewed the EKG printout and noted that it contained an artifact due Garrett shaking his leg. Defendant Barnes instructed Nurse Rich to repeat the EKG, but he refused to do so. Defendant Barnes had the EKG repeated and the second EKG indicated a normal sinus rhythm.

The printout from the first EKG is not in Garrett's medical files. He contends that CRNP Barnes had the medical record intentionally destroyed. According to Garrett, CRNP Barnes' "conscious decision to deny Plaintiff medical treatment and to destroy Plaintiff's medical records was the result of Defendant Barnes' deliberate indifference to Plaintiff's serious medical needs." Fifth Amended Complaint, at ¶ 70.

The undersigned finds Garrett's argument unavailing. On summary judgment, the nonmoving party must affirmatively "show where in the record there exists a genuine dispute over a material fact." *Wharton v. Danbert*, 854 F.3d 234, 244 (3d Cir. 2017) (quoting *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007)). "[S]peculation and conjecture may

not defeat a motion for summary judgment[.]" *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 228 (3d Cir. 2009) (citing *Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 332-33 (3d Cir. 2005)).  But speculation is all that Garrett can put forward to show that Defendant Barnes intentionally destroyed a medical record demonstrating that he suffered from an objectively serious medical need.  The record offers no reasons to believe that Defendant Barnes destroyed a medical record or was deliberately indifferent to Garrett's serious medical needs.

For example, in her deposition Defendant Barnes testified that she set the first EKG printout "back down on the table" and does not remember what happened to it after that.  Barnes Depo. at p. 95, Lines 21 – 24.  She also explained why a second EKG was needed:

> Rich called me over and handed me an EKG and said, he has uncontrolled AFib, he needs to go to the hospital.  And I looked at Rich and I looked at the (sic) and read the EKG and I looked at the patient and the patient was lying there shaking his leg in the air, like six inches of the table.  And I said, well, I said, was he shaking his leg?  And he said yes.  And I said, well, first thing you need to do, when you take an EKG, they have to lay still because the EKG machine picks up muscle contractions.  I said, this EKG is artifact, there's a bunch of stuff on here from him shaking his leg.[5]

> And Rich refused to repeat it, so I had Roger repeat it, with his leg still.

Depo of Barnes, at p. 54, Lines 3 – 17.

The undersigned finds that no reasonable jury could infer deliberate indifference on the part of Defendant Barnes from the summary judgment record.  The record offers no reason from which a reasonable jury could find that Defendant Barnes intentionally destroyed a medical record or that she was deliberately indifferent to Garrett's serious heart condition.  Accordingly, it is recommended that summary judgment be granted to Defendant Barnes.

---

[5]  Defendant Barnes explained "artifact" to mean "extra lines and extra bumps and stuff from muscle contractions of his leg."  Depo of Barnes, p. 56, Lines 6-9.

### iii. Debra Cutshall

The Medical Defendants argue that summary judgment should be granted to Defendant Cutshall because there is no evidence that she was involved in Garrett's medical treatment or decision making because she was no longer at SCI-Houtzdale by the time of Garrett arrived on January 9, 2014. In support of her argument, Defendant Cutshall has submitted a sworn affidavit stating that she was transferred from SCI-Houtzdale to SCI-Smithfield on January 1, 2014, prior to Garrett's arrival at SCI-Houtzdale. *See* Declaration of Debra Cutshall, Exh. C. (ECF 351-4). Notably, as Garrett points out, there are no employment records attached to the Cutshall affidavit to confirm the date of her transfer.

And, more importantly, there is evidence in the record which contradicts the affidavit. First, during her deposition, Cutshall testified that her recollection was that she worked at SCI-Houtzdale until February 2014, but that she would have to go back and look at her records to see when she transferred. (ECF 361-7, p. 20). Cutshall testified that in her role as Health Services Administrator, she "supervised" Dr. Naji. Additionally, Garrett testified that Cutshall was present at the meeting between Dr. Naji, Pearson, and Younkin in January 2014, when he overheard Dr. Naji admit to the improper, non-medical basis for denying Garrett a walker. Viewing the evidence in the record in the light most favorable to Garrett, the Court finds that a genuine issue of material facts exists as to whether Defendant Cutshall had personal involvement with Garrett's medical care. Therefore, it is recommended that summary judgment be denied as to Defendant Cuthshall.

### 2. Garrett's Retaliation Claim Against Dr. Naji

Garrett's theory of retaliation against Dr. Naji is premised upon his underlying allegations that Dr. Naji was deliberately indifferent to Garrett's medical needs. In order for Garrett's retaliation claim to survive summary judgment, Garrett must provide evidence of a causal link between his constitutionally protected conduct and the alleged adverse actions. Here, the rectal examination occurred on January 9, 2014. The walker was discontinued by Dr. Naji on January 13, 2014, only four days later. Thereafter, the record is replete with evidence from which a reasonable jury could conclude that Dr. Naji continued to retaliate against Garrett, *i.e.*, characterizing him as malingering, denying his requests for an assistive device, denying requests for disability gym access, a handicapped cell, and handicapped shower access. For these reasons, it is recommended that summary judgment be denied on Garrett's retaliation claim against Dr. Naji.

## III.  CONCLUSION

For the reasons stated above, it is respectfully recommended that the Motion for Summary Judgment filed by Defendants Barnes, Cutshall, and Naji be granted in part and denied in part as follows:

(1) It is recommended that summary judgment be granted to Defendant Barnes on Garrett's deliberate indifference claim;

(2) It is recommended that summary judgment be denied in all other respects.

Any party is permitted to file Objections to this Report and Recommendation to the assigned United States District Judge. In accordance with 28 U.S.C. § 636(b), Fed.R.Civ.P. 6(d) and 72(b)(2), and LCvR 72.D.2, any written objections must be filed by **September 8, 2022**. The parties are cautioned that failure to file Objections within this timeframe "will waive the

right to appeal." *Brightwell v. Lehman*, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). *See also EEOC v. City of Long Branch*, 866 F.3d 93, 100 (3d Cir. 2017) (describing standard of appellate review when no timely and specific objections are filed as limited to review for plain error). Any party opposing objections shall have fourteen days from the date of service of objections to respond.

s/ Cynthia Reed Eddy  
Cynthia Reed Eddy  
Chief United States Magistrate Judge

Dated:  August 24, 2022  
cc:       All Counsel of Record  
          (via ECF electronic notification)